UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARLES LITTLE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:04-cv-1163 (WWE) |
| | : | |
| | : | |
| BRIDGEPORT BOARD OF EDUCATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This case arises from plaintiff Reverend Charles Little's claims of employment discrimination based on race and retaliation allegedly stemming from his filing of a grievance with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Little brings his claims pursuant to Title VII of the Human Rights Act, 42 U.S.C. § 2000e, et seq. and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § § 46a-60(a)(1) and (a)(4) ("CFEPA"). Defendant Bridgeport Board of Education (the "Board") moves for summary judgment.

1

**BACKGROUND**

Plaintiff is an African American man who has been employed by the Board as a custodian for approximately thirteen years. He began his tenure with the Board as a Custodian I and advanced to a Custodian IV.[1] He was demoted to Custodian III in 2000. In November 2001, plaintiff filed a complaint with the CHRO, alleging that he had been discriminated against by defendant on the basis of his race. Plaintiff withdrew this complaint on or about October 8, 2002.

Beginning in August 2002, plaintiff was asked to perform numerous duties, including: 1) vacuuming teachers' personal rugs; 2) sweeping roof tops; 3) cleaning walls; 4) removing teachers' personal effects from window ledges; and 5) accounting for Custodian IVs' actions. Plaintiff alleges that these duties are outside the scope of the job responsibilities of a Custodian III and that other Custodian IIIs were not assigned them.

As of November 2002, Frank Kochan became plaintiff's supervisor. Kochan was new to the district at that time. Peter Delaney became the Board's Custodial Operations Manager in January 2003. Neither Kochan nor Delaney were aware of plaintiff's CHRO complaint at this time.[2]

On March 21, 2003, two children vomited on a table and floor during an after-

---

[1] Custodians in Bridgeport are ranked from Custodian I through Custodian IV, with Custodian IV as the highest level.

[2] Kochan claims he was first made aware of plaintiff's 2001 CHRO complaint in September 2003 (Kochan Affidavit, ¶ 8). Delaney asserts that he did not know about plaintiff's 2001 CHRO complaint until sometime after March 2003 (Delaney Affidavit, ¶ 7).

2

school program at the John Winthrop School, the school to which plaintiff was then assigned. At the time of the incident, plaintiff was the highest ranking custodian at the school (a Custodian III) and, as such, was responsible for ensuring the completion of all cleaning tasks. Plaintiff claims he assigned the task to clean up the vomit to a Custodian I because, he asserts, the job of cleaning up vomit does not fall within his job description. The vomit was not cleaned up.

On April 1, 2003, the principal of the John Winthrop School, Randolph Dixon, wrote a memorandum to Peter Delaney, informing him that he had received complaints and negative feedback from teachers, staff, students, and the community regarding the uncleanliness of the facility. Dixon also complained to Kochan specifically about plaintiff's failure to fulfill his job duties.

In response to Dixon's complaints, Kochan performed inspections of the school during the week of April 3, 2003 in order to monitor the work of the custodians. Kochan claims that plaintiff's assigned work area was in poor condition and significantly worse than the areas that were assigned to other custodial staff (Kochan Affidavit, ¶ 11).

Subsequently, plaintiff was demoted to Custodian I on May 8, 2003. On or about May 19, 2003, plaintiff was placed on a five-day suspension without pay as part of the disciplinary action taken as a result of the vomit incident. Plaintiff claims that Delaney referred to him as "boy" twice during the disciplinary proceeding.

On June 4, 2003, plaintiff was transferred to the Wilbur Cross School and assigned to the day shift instead of the afternoon shift he had worked while at Winthrop. Plaintiff claims he was unable to receive overtime while on this assignment and,

therefore, suffered a loss in pay.

In June 2003, plaintiff submitted a request for vacation during two weeks in August 2003.  This request was denied.  However, plaintiff took off the requested dates anyway.  Later, he submitted a note from his physician that informed his superiors that plaintiff needed time away from work due to job-related anxiety.

On August 18, 2003, plaintiff filed his second CHRO complaint.  In that complaint, plaintiff alleged that the aforementioned events occurred in retaliation for his having filed the 2001 CHRO complaint.  Plaintiff did not allege any racial discrimination in the 2003 complaint.

Fourteen months after plaintiff filed the 2003 CHRO complaint, in October 2004, a teacher reported an incident between a student and plaintiff involving inappropriate touching.[3]   As a result, Thomas McCarthy, Senior Labor Relations Officer, removed plaintiff from the school and placed him on a paid suspension pending the outcome of an investigation.  Plaintiff was offered a transfer to the garage; this would enable plaintiff to work in an area with no children as required until the resolution of the matter.  Plaintiff accepted this offer. There was no change in plaintiff's job title, duties or hourly pay.

Upon completion of the investigation, McCarthy concluded that plaintiff had not engaged in conduct that warranted him being prohibited from working in schools.  Thereafter, plaintiff was assigned to Bassick High School, where he has maintained the same job title and salary.

---

[3]Defendant claims the "touching" entailed hugging (McCarthy Affidavit, ¶ 7); plaintiff alleges that it was "tickling" (Plaintiff's Deposition, p. 189).

Plaintiff also claims that the Board has failed to comply with the terms and conditions of an award granted to him by the State Board of Mediation and Arbitration and that this, too, is an incident of retaliation and racial discrimination.  In 2000, plaintiff was demoted from the position of Custodian IV to Custodian III.  Claiming this was a wrongful demotion, plaintiff filed a grievance with the Labor Relations Board, asserting that defendant had violated the terms of the collective bargaining agreement with his union, Local RI-200 of the National Association of Governmental Employees ("NAGE").  On July 14, 2003, the State Board of Mediation and Arbitration found in plaintiff's favor and issued an award.  The award provided that "as a remedy, we order the City to make the Grievant whole for any wages or other benefits which he has lost a result of the bump back.  This amounts to putting the Grievant in the same, or nearly the same, position he would have been but for the wrongful bump back."   Defendant has paid plaintiff approximately $19,000 in back wages, asserting that this satisfies the requirements of the award.  Plaintiff argues that the award also provides for his reinstatement to Custodian IV.  NAGE filed an application for an order of contempt and an order to show cause; the Superior Court convened a hearing on the matter and requested that the parties obtain an articulation of the award from the State Board.  The State Board declined to do so, stating that it is outside of their jurisdiction to issue a clarification of an award.  The dispute over the remedy continues to this day.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d

5

265 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 24.

**I.      Title VII Claims**

Plaintiff asserts that defendant discriminated against him based on his race and retaliated against him as a result of the complaint he filed with the CHRO in 2001.  Title VII of the Civil Rights Act of 1964 prohibits employment discrimination against any individual because of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a).  The Act contains a specific anti-retaliation provision that forbids an employer from discriminating against an employee because the employee has opposed any practice made unlawful by Title VII or "made a charge, testified, assisted, or participated in a

Title VII proceeding or investigation." 42 U.S.C. § 2000e-3(a). Burlington Northern & Santa Fe Railway Co. v. White, – U.S. –, 126 S.Ct. 2405, 2408, 165 L.Ed.2d 345 (2006).

In order to establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in a protected activity under Title VII; (2) the employer was aware of the protected activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Plaintiff satisfies the first prong of this test in that he did file a complaint with the CHRO in 2001.

However, plaintiff presents no facts that support his claim that his superiors were aware of his CHRO complaint at the time of the alleged adverse employment actions. Defendant has supplied the Court with affidavits by Frank Kochan, Custodian Operations Supervisor, Thomas McCarthy, Senior Labor Relations Officer, and Peter Delaney, Custodial Operations Manager, in which these witnesses testify that they were unaware of plaintiff's CHRO complaint at such time. Plaintiff's merely conclusory averments are not sufficient to survive summary judgment. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005).

It is arguable that plaintiff's allegations of adverse employment actions could satisfy the third prong of this test. He was demoted to Custodian I and, in 2003, was placed on a suspension without pay. In order to meet the level of "adverse," plaintiff must demonstrate a materially adverse change in the conditions of his employment.

7

Galabya v. New York City Board of Education, 202 F.3d 636, 640 (2d Cir. 2000) (affirming grant of summary judgment because plaintiff failed to present evidence that a reassignment constituted an adverse employment action).  An adverse change might include, inter alia, a termination of employment, a demotion (including a reduction in wage or salary), or diminished responsibilities.  Id.

    Even if plaintiff's allegations of adverse employment actions rose to the level of hardship that must be met in order to satisfy the third prong of the test for retaliation, he has failed to satisfy the fourth prong of the test; i.e., that there is a causal relationship between the actions complained of and the retaliation alleged to have occurred as a result of plaintiff's protected act.   In order to establish a causal relationship between the alleged adverse actions and the alleged retaliation, there must be sufficient temporal proximity between the two.  Clark County School District v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d (2001).  Plaintiff's allegations do not establish this necessary nexus.  Even if defendant knew about plaintiff's protected activity at the time of the employment actions taken, the acts and the knowledge are not closely related in time.  For example, plaintiff filed the 2001 CHRO complaint on November 19, 2001, but does not complain of any retaliatory actions occurring until April 2003, when defendant allegedly instituted duties for the purpose of harassing plaintiff.  At least seventeen months passed between plaintiff's filing of the CHRO complaint and the first alleged retaliatory act.  The Second Circuit has held that even a three-month gap between the protected activity and the employment act may negate an inference of retaliation.  O'Reilly v. Consolidated Edison Co. of New York, Inc., 2006 WL 565690, *1 (2d Cir.).  Accordingly, plaintiff is not entitled to summary judgment.

Even assuming for the purposes of this ruling that plaintiff could establish a prima facie case of retaliation, the Court must then apply the burden-shifting analysis established by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Pursuant to this analysis, once plaintiff makes a prima facie case, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  If the employer accomplishes this, the burden then shifts back to plaintiff, who must show that defendant's reasons are merely pretextual.  <u>Id.</u> at 807.

In the present case, plaintiff claims that the following actions were retaliatory: (1) a suspension in May 2003; (2) assignment of purportedly harassing duties in April 2003; (3) inspection of his work in April 2003; (4) a demotion in May 2003; (5) a transfer in June 2003; (6) a purported refusal to reinstate him to the Custodian IV position after a grievance arbitration award in July 2003; (7) the denial of a vacation request in August 2003; and (8) a transfer to the garage in October 2004.

In turn, defendant presents credible evidence that these actions were not retaliatory in nature and that there were legitimate reasons for each event: that the "vomit incident" was the reason for the suspension; that the assignment of "harassing duties" was merely the enforcement of typical custodial tasks and that the failure to perform these duties was reason for the demotion and transfer; that the grievance award was ambiguous as to the meaning of making the plaintiff "whole;" that the denial of the vacation request was due to the heavy workload necessary for the imminent school opening; and that the transfer to the garage was necessitated by a complaint that plaintiff had touched a student inappropriately and that, while an investigation into

the incident was ongoing, it was determined that plaintiff was not to be around students. In response, plaintiff presents no evidence to suggest that these reasons are pretextual.[4] He merely reiterates his speculative and conclusory allegations that such actions were retaliatory. Such assertions, without more, are insufficient to withstand a motion for summary judgment.

Plaintiff also claims that he was discriminated against because of his race. It is significant that plaintiff alleged racial discrimination in the 2001 CHRO complaint, which he subsequently withdrew in October 2002. In his August 18, 2003 CHRO complaint, plaintiff alleged that the incidents herein described were committed in retaliation for the 2001 CHRO complaint. There is no allegation of racial discrimination in the 2003 Complaint. A district court has jurisdiction over a Title VII claim only if it has been included in a prior EEOC charge or if it is reasonably related to the EEOC charge. Butts v. City of New York Dept. of Housing Preservation and Development, 990 F.2d 1397, 1401 (2d Cir. 1993). Because there is no EEOC charge related to racial discrimination, plaintiff's claim is improperly before this Court.

However, assuming that plaintiff's claim of racial discrimination is properly before the Court, the Court will consider its validity pursuant to the necessary tests. The test for a prima facie case of discrimination under Title VII requires plaintiff to show: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained opened and the

---

[4] In his deposition, plaintiff admitted that he had no evidence that the transfer to the garage was retaliatory. (Plaintiff's Depo., p. 195).

employer continued to seek applicants from persons of plaintiff's qualifications. McDonnell Douglass Corp. v. Green, 411 U.S. at 802.

Plaintiff finds discriminatory treatment in all of the actions he cites to demonstrate retaliation. However, none of them falls within the rubric of the Title VII analysis set forth in McDonnell Douglass. Even if they did, however, defendant's employment decisions were not based on plaintiff's race for the same reasons they were not based on retaliation. Plaintiff's own conduct is the nonpretextual reason for defendant' actions as discussed, supra.

Plaintiff does refer to an instance of perceived race discrimination in his allegation that one of defendant's agents called him "boy" during the May 2003 disciplinary hearing. This alleged comment, while highly offensive, does not rise to the level of racial discrimination for the purposes of Title VII.

Title VII does not establish a code of general civility for the American workplace. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). In order to prove a claim of racial discrimination in the workplace, an employee must demonstrate that the conduct complained of was so severe and pervasive as to create a hostile work environment. Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986). An isolated utterance of an offensive epithet does not create a hostile work environment so as to implicate Title VII. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Plaintiff's claim fails.

## II.     State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise its supplemental jurisdiction over plaintiff's state law claims when the Court has disposed of all claims over which it has original jurisdiction.  The Court chooses to decline its supplemental jurisdiction and, therefore, dismisses plaintiff's CFEPA claims.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [Doc. #31] is GRANTED.  The Clerk is instructed to close this case.

Dated this 26th day of December, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Court Judge